IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

GLEN EARL BLACKWELL,       )
                           )
       Plaintiff,          )
                           )
                           )   CIV-13-534-D
v.                         )
                           )
CAROLYN W. COLVIN,         )
  Acting Commissioner of Social )
  Security Administration, )
                           )
       Defendant.          )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed applications for disability benefits in March 2010, alleging that he

became disabled on February 27, 2010, due to back, neck, and leg impairments, chronic obstructive pulmonary disease ("COPD"), dyslexia, and depression. (TR 164, 168, 191). At a hearing conducted in October 2011, Plaintiff testified that he was 45 years old, lived with his brother (he had "just moved" to Oklahoma from Kansas)(TR 37), and had not worked since February 27, 2010, when he was injured in a motor vehicle accident ("MVA").

Plaintiff described a seventh grade education and learning disabilities in reading, writing, and math. Plaintiff testified he first injured his back in a work-related accident in 1991 and underwent two back surgeries to repair the injuries. He then returned to work as a welder, truck driver, and construction worker. Plaintiff stated that the neck and back injuries he received in the February 2010 MVA prevented him from engaging in most daily activities, including cooking, laundry, grocery shopping, and home maintenance. Plaintiff stated that he had pain in his middle back and left leg and arm. Plaintiff testified his left leg gives out one to two times per week, that his left hand is weak, and that he took ½ pill of narcotic pain medication each day, although it caused depression. Plaintiff estimated he could sit for 45 minutes, walk ½ block, stand 10 to 15 minutes, lift 15 to 20 pounds and five to 10 pounds repetitively, and never bend over.

In a function report dated April 2010 Plaintiff stated that he watched movies and television, went to his medical and counseling appointments, occasionally went out to eat with friends or grocery shopping, prepared his own meals, did his own cleaning and laundry chores, and used no assistive devices for walking. (TR 225-232).

The medical record reflects that Plaintiff injured his back in 1991 and underwent two

lumbar fusion operations to repair the injuries. After these operations, Plaintiff returned to work and worked until February 27, 2010, when he was involved in the MVA. He was treated at a hospital emergency room following the accident. The treating physician, Dr. John Stepanek, noted that CT scans of Plaintiff's cervical spine, brain, abdomen, and pelvis were negative and that Plaintiff was treated for thoracic and cervical strain and discharged in stable condition with pain medication. (TR 268-269). The record of this treatment includes a report of a CT scan of Plaintiff's chest, abdomen, and pelvis that was interpreted as showing, *inter alia,* emphysema. (TR 274).

In April 2010, Plaintiff sought treatment from his treating primary care physician, Dr. Oatman, who noted Plaintiff complained of back and leg pain after the MVA two months earlier. He was taking over-the-counter pain medication. A physical examination was noted to show decreased range of motion, muscle spasms, diffuse tenderness, and a "guarded gait." (TR 333). Dr. Oatman prescribed pain, muscle relaxant, and anti-inflammatory medications and referred Plaintiff to a neurosurgeon.

In May 2010, Plaintiff underwent a consultative psychiatric evaluation conducted by Dr. Vaidya. Plaintiff complained that the February 2010 MVA had worsened his previous back problems and that he was depressed because he could not work, although he had no previous depression issues. He was not taking pain medication. Plaintiff stated that he had been diagnosed with COPD at the hospital where he was treated following the MVA but he was still smoking. The psychiatrist's diagnostic impression was adjustment disorder with depressed mood. Dr. Vaidya noted Plaintiff

3

> would really like to work but he can't work 120 feet in the air and had to quit his job. He can't walk, stand or sit for long periods of time. He is in chronic pain. He has been told he needs to go and see a neurosurgeon to find out what is wrong with him. He has already had two back surgeries. His ability to work is moderately impaired because of his back and neck. His depression is secondary to the fact that he is not working and he has lost everything. He will be able to handle benefits if granted.

(TR 285).

In May 2010, Plaintiff underwent a psychosocial assessment at a mental health treatment center. The evaluator noted Plaintiff had been referred to the center by his social security disability attorney and that Plaintiff complained of depression since his MVA and inability to work due to a back injury. He denied a history of depression and requested counseling. The diagnostic impression was major depression, single episode, moderate, rule out alcoholism. (TR 395). In an initial counseling session, the counselor noted Plaintiff indicated "his depression stems entirely from the losses incurred as a result of his back injury (he can no longer enjoy the outdoors - hunt, fish, or work on cars)." (TR 384). He was "ambivalent" in his responses during the session but appeared to be depressed "below the surface." (TR 384).

In May 2010, Plaintiff was evaluated by Dr. Remondino, a neurosurgeon. He reported that he could not work after the MVA due to back and left leg pain, pain in his upper back and left arm, and occasional left leg weakness, that nothing relieved his symptoms, and he had not undergone physical therapy, injections, or other conservative treatment. According to Dr. Remondino, a CT scan of Plaintiff's lumbar spine "shows a good solid fusion from L4

4

to S1." (TR 352). Plaintiff underwent further testing, including a CT myelogram and MRI of his cervical spine.

In June 2010, Dr. Morgan conducted a consultative physical examination of Plaintiff and noted that Plaintiff exhibited "marked limitation of motion of the lumbar spine and spasm of the paralumbar muscle groups," normal grip strength, normal fine and gross manipulation abilities, and a "slight limp" but "safe and stable" gait. (TR 290). There were no neurological deficits on examination. Plaintiff was taking over-the-counter pain medication and using heat for neck and back pain that he described as "stabbing" and "severe" and limited him to no lifting, walking "only about 100 feet and stand[ing] five to ten minutes." (TR 289). The diagnostic impression was probable degenerative arthritis and degenerative disc disease of the lower lumbar spine.

Dr. Remondino noted that in a follow-up examination conducted in June 2010, Plaintiff still complained of back pain with occasional radiation to his left leg, occasional left leg weakness, and pain between his shoulder blades radiating to his left arm. Dr. Remondino interpreted the CT myelogram of Plaintiff's lumbar spine as showing solid fusion from L4 to S1 with internal bone stimulator planted, and a small extradural defect on the right at L2-3 causing poor filling of the left L3 nerve root. Dr. Remondino advised Plaintiff that "any form of surgical intervention would be a large undertaking" and that Plaintiff's best option was conservative treatment, including physical therapy and epidural steroid injections. (TR 358).

In June 2010, Plaintiff returned to Dr. Oatman and stated that the previously-

prescribed medications "helped" his low back pain. (TR 332). Plaintiff reportedly lived in Ponca City, Oklahoma, but "works out of town at times." (TR 332). The pain medication was refilled and Plaintiff was referred to a pain management specialist. (TR 332). Dr. Oatman noted that Plaintiff's mood and affect were normal and that he exhibited no neurological deficits other than a "guarded gait." (TR 332).

Although Plaintiff failed to show up for a follow-up appointment with Dr. Remondino in August 2010, he returned to Dr. Remondino for follow-up in October 2010. Plaintiff reportedly was "doing fair" and still experiencing neck pain into his left shoulder and occasionally into his left arm, back pain, left leg pain, and left knee problems. In a physical examination, Plaintiff's strength was noted to be 5/5. Dr. Remondino advised Plaintiff that his previous lumbar fusion was good and solid, that his disc protrusion at L2-3 was "nonsurgical," that Plaintiff had completed physical therapy, that epidural steroid injections had aggravated his symptoms, and no further conservative treatment would be beneficial. (TR 363). In September 2011, Plaintiff was treated at a medical clinic in Kansas for thoracic pain. Pain, muscle relaxant, and anti-inflammatory medications were prescribed. (TR 412).

The ALJ issued a decision on December 14, 2011, in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. Employing the familiar sequential evaluation procedure dictated by the agency, the ALJ found at step two that Plaintiff had severe impairments of degenerative disc disease of the lumbar and cervical spines, osteoarthritis, COPD, dyslexia, and depression. (TR 13). At step three, the ALJ found that Plaintiff's impairments were not disabling *per se* as they did not meet or medically

equal the severity of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. At step four, the ALJ meticulously and extensively reviewed the medical record and found that Plaintiff's impairments would limit him to the performance of sedentary work with additional limitations. He could only occasionally climb stairs or ramps, balance, bend, stoop, kneel, crouch, or crawl, he could not climb ladders, ropes, or scaffolding, he would be able to perform only "simple tasks and some moderately complex tasks," and he could have only "superficial contact with co-workers, supervisors, and the public." (TR 17).

Based on this residual functional capacity ("RFC") for work, Plaintiff's vocational history, and the testimony of the vocational expert at the administrative hearing, the ALJ found that Plaintiff was capable of performing jobs available in the economy, including the jobs of grinding machine operator, circuit board assembler, and production assembler. The ALJ concluded, in light of these findings, that Plaintiff was not disabled.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as

7

adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. Credibility

Plaintiff contends that the ALJ's credibility determination was faulty because each of the reasons given by the ALJ for discounting Plaintiff's credibility were either not supported by the evidence or were legally insufficient. The assessment of a claimant's RFC at step four generally requires the ALJ to "make a finding about the credibility of the [claimant's] statements about [her] symptom(s) and [their] functional effects." Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at * 1 (1996). "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). But an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements" in determining a claimant's credibility. SSR 96-7p, 1996 WL 374186, at * 4 (1996). Credibility findings should "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and alteration omitted).

In addition to objective evidence, the ALJ should consider certain factors in evaluating a claimant's incredibility, including the claimant's daily activities; the location, duration, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; any treatment other than medications the individual receives or has received for pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, 1996 WL 374186, at * 3. See Hamlin v. Barnhart, 365 F.3d 1208, 1220 (10th Cir. 2004)(stating ALJs "should consider" factors set forth in SSR 96-7p).

An ALJ is not, however, required to conduct a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Employing "common sense" as a guide, the ALJ's decision is sufficient if it "sets forth the specific evidence he [or she] relies on in evaluating the claimant's credibility." Id.; Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012).

In his decision, the ALJ found that Plaintiff described "fairly limited" daily activities but stated that

> two factors weigh against these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Second, even if the claimant's activities of daily living were truly as limited as alleged, it is

9

> difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the medical evidence and other forms discussed in this decision. Overall, the reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

(TR 21).

The Tenth Circuit Court of Appeals has recognized that such "conclusory analysis, which neither reveals what 'other reasons' or 'other factors' prompted the ALJ's conclusions" is "disfavored boilerplate" that could be problematic UNLESS the boilerplate is accompanied by a more thorough analysis. <u>Keyes-Zachary v. Astrue</u>, 695 F.3d 1156, 1170 (10th Cir. 2012).

The ALJ described Plaintiff's testimony and statements to physicians appearing in the medical record and also thoroughly analyzed the medical evidence in the record. The ALJ provided additional reasons, other than the unfortunate boilerplate language, for discounting the credibility of Plaintiff's subjective statements. The ALJ reasoned that Plaintiff's neurosurgeon found his previous back surgery was "successful," that the disc protrusion in Plaintiff's lumbar spine was "nonsurgical," and that further conservative treatment would not be beneficial. (TR 21). Plaintiff contends that evidence that (1) Dr. Remondino had noted additional back surgery would be "a large undertaking" given Plaintiff's previous back fusion and the location of the disc protrusion and that (2) he continued to experience pain after undergoing conservative treatment measures should have bolstered, rather than detracted from, his credibility. However, the ALJ could properly rely on Dr. Remondino's statements that Plaintiff's back impairments did not require ongoing treatment and that the disc

protrusion in his lumbar spine was a "nonsurgical" condition to support the credibility finding.

Further, the ALJ pointed to inconsistencies in Plaintiff's statements to his treating neurosurgeon, Dr. Remondino, and Plaintiff's statements to his primary care physician, Dr. Oatman. (TR 22). The ALJ also pointed to inconsistencies in Plaintiff's statements concerning medical side effects and the lack of objective medical evidence to support the Plaintiff's allegations of severe, disabling pain. The ALJ further reasoned that the record of Plaintiff's treatment at Edwin Fair, a mental health clinic, indicated he sought treatment "primarily to generate evidence for this application and appeal, rather than in a genuine attempt to obtain relief from the depression he has experienced following his automobile accident in February of 2010." (TR 22).

These reasons are well supported by the evidence in the record. Plaintiff heartily argues that the ALJ's suggestion of a less-than-proper motive for the treatment Plaintiff received at the Edwin Fair mental health clinic was "highly insulting." However, the record of Plaintiff's initial counseling session at the mental health clinic, which occurred after Plaintiff applied for benefits, reflects that the Plaintiff had indeed been referred to the clinic by his social security disability attorney. The counselor's progress note of this session indicates Plaintiff had an ambivalent attitude toward mental health treatment and that he rejected the counselor's treatment suggestions. Moreover, there are no further notes of treatment of Plaintiff at the clinic after the initial counseling session. Under these circumstances, the ALJ could make the common sense assessment that the evidence

11

reflected treatment that was improperly motivated for disability purposes and not an effort by Plaintiff to obtain relief for depression symptoms.

The ALJ did not entirely discount Plaintiff's subjective statements but found that the statements were simply inconsistent with other medical and nonmedical evidence in the record and that inconsistencies in Plaintiff's subjective statements concerning the effects of his medications detracted from his credibility. Substantial evidence supports the ALJ's credibility determination, and only harmless error, if any, occurred with respect to the ALJ's evaluation of the evidence in this regard.

IV. RFC Assessment

Plaintiff contends that the exertional limitations in the ALJ's RFC assessment are not supported by substantial evidence in the record. As support for his argument, Plaintiff points to his own statements that he needed to alternate positions and asserts that the RFC should have included a limitation for the need to alternate positions. However, no physician found that Plaintiff must alternate positions in work-related or other daily activities, and Plaintiff points to no such evidence in the record.

Plaintiff next lumps several physicians' discrete, objective observations concerning, *inter alia,* Plaintiff's gait, reflexes, straight leg raise testing, and heel and toe walking, and postulates that these observations indicate the medical evidence was consistent with his subjective statements concerning his limited ability to sit, stand, or walk. The conclusory postulation does not, however, support the assertion that there was not substantial evidence to support the RFC assessment in the record. No treating or examining physician opined that

Plaintiff's impairments would preclude him from working. Dr. Morgan noted that Plaintiff exhibited a safe and stable gait without an assistive device and that he did not exhibit neurological deficits. (TR 290). Physicians interpreting the CT scan of Plaintiff's lumbar spine opined that his previous lumbar fusion was solid and that the one-level disc protrusion was not clinically significant, and Dr. Remondino noted in October 2010 that Plaintiff exhibited full strength on examination and that no further conservative treatment measures would be beneficial. (TR 356, 363). Plaintiff reported that pain medication helped his pain symptoms and even reported that he was working "out of town at times" in June 2010. (TR 332). There is substantial evidence in the record to support the RFC assessment. The ALJ's step four determination is supported by substantial evidence in the record, and the ultimate step five finding of nondisability is also supported by substantial evidence in the record. Consequently, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____ July 9th _____, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's

recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this \_\_\_\_19th\_\_\_\_ day of \_\_\_\_June\_\_\_\_, 2014.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE